Gants, J.
On February 19, 1994, the plaintiff, Jane A. Gillis (“Gillis”), visited the defendant Tedeschi Food Shop (“Tedeschi”), located at a strip mall owned by the defendant/third-party plaintiff DeMarkles Realty Trust (“DeMarkles”).[1] After leaving Tedeschi, at roughly the point where the sidewalk outside Tedeschi met the parking lot, she allegedly fell as a result of the negligent maintenance of the sidewalk.
In 1997, Gillis filed suit against DeMarkles and Tedeschi, seeking damages resulting from the serious injuries she allegedly sustained from her fall. DeMarkles subsequently filed a third party complaint against the defendant Commercial Union Insurance Companies (“Commercial Union”), alleging that Commercial Union breached its insurance contract and its *272 obligations of good faith and fair dealing by refusing to defend and indemnify DeMarkles on this claim, While contending that this claim was covered under Tedeschi’s insurance policy with Commercial Union, DeMarkles also filed a cross-claim against Tedeschi, arguing in the alternative that, if DeMarkles were not covered for this claim, Tedeschi breached its obligation in the lease to provide DeMarkles with insurance coverage for claims such as these.
DeMarkles seeks summary judgment against both Commercial Union and Tedeschi, and they have filed cross-motions seeking summary judgment against DeMarkles. For the reasons stated below, the cross-motions for summary judgment brought by Commercial Union and Tedeschi are GRANTED and the motions for summary judgment brought by DeMarkles are DENIED.
BACKGROUND
It is undisputed that, at the time of Gillis’ fall on February 19, 1994, Tedeschi was one of the tenants in a strip mall owned and operated by DeMarkles at 425 Washington Street in Weymouth. Under the terms of their original Lease, dated May 15, 1969, and the Lease Amendment and Extension Agreement dated January 18,1989 (which extended the lease term until August 31, 1994), Tedeschi rented from DeMarkles a store with 2,470 square feet located in a larger building. The leased space, all of it interior space, was described in the lease as the “premises” or the “demised premises.”
With exceptions not relevant to this case, the Lease provided that “[t]he Tenant will keep the interior parts of the building on the demised premises in as good repair as same are in when possession hereunder is given to it. . .” Original Lease, p. 5. The Lease obliged the landlord to:
keep in good order, maintain and repair all common areas and facilities in the shopping center. Such common area maintenance and repair shall include but not be limited to, the repair, maintenance and upkeep of the parking lot, snow removal, debris removal, lighting of the parking lot, shopping center, and landscaping.
1989 Extension Agreement, §10. Tedeschi was required to pay the landlord nearly $1,000 in common area maintenance charges.
Under the Lease, Tedeschi was required to “keep in full force and effect a policy of public liability insurance with respect to the demised premises and the business operation by the Tenant... which policy will be kept in force for the benefit of the Tenant and the Landlord and both shall be named as insured therein.” Original Lease, pp. 1-2. Tedeschi was also obligated to pay 57 percent of the cost of the Landlord’s public liability and casualty insurance for the shopping center. 1989 Extension Agreement, §7,8.
At the time the claim was made, Tedeschi was an insured under a Commercial General Liability Policy issued by Commercial Union (“the Policy”). DeMarkles was an additional insured under this Policy, “but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Tedeschi] . . .” Policy, Additional Insured Endorsement. Tedeschi did not pay any additional premium to add DeMarkles as an insured.
DISCUSSION
The questions before this Court are :
1. Does Commercial Union under its Policy owe DeMarkles a duty to defend and indemnify this claim because it arises “out of the ownership, maintenance or use of that part of the premises leased to [Tedeschi]?”
2. If not, did Tedeschi breach its lease agreement with DeMarkles by failing to “keep in full force and effect a policy of public liability insurance with respect to the demised premises and the business operation by the Tenant?”
I will address each in turn.
1. Does Commercial Union Owe DeMarkles a Duty to Defend This Claim?
The duty of an insurer to defend a claim is far broader than its duty to indemnify. Long, The Law of Liability Insurance at 5-4 (1983). If the allegations of the complaint, combined with extrinsic facts known or readily knowable by the insurer, are reasonably susceptible of an interpretation that they state a claim covered by the policy terms, the insurer must undertake the defense. Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984), and cases cited; Desrosiers v. Royal Insurance Co. of America, 393 Mass. 37, 40 (1984); Terrio v. McDonough, 16 Mass.App. 163, 167, rev. den., 390 Mass. 1102 (1983).
Moreover, in construing the language of an insurance policy, I must “consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Atlantic Mutual Insurance Co. v. McFadden, 413 Mass. 90, 92 (1992) quoting Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407 Mass. 689, 700 (1990). This focus on the reasonable understanding of the insured reflects not only the legal principle that the insurer wrote the policy and any ambiguity in its language must be resolved against the drafter. See Quincy Mutual Fire Insurance Co. v. Abernathy, 393 Mass. 81, 83 (1984). It also reflects the practical recognition that, if an insured reasonably believes that a risk is covered by an insurance policy, he is unlikely to seek other coverage to protect against that risk. Therefore, since the insured may reasonably have relied on the policy language to forego other coverage, the insurer that induced such reliance by its careless use of language should be obliged to cover that risk. In short, it is important that the insurer make its insurance policy *273 clear as to what risks are covered and what are not so that, when a risk is not covered, an insured can make an informed decision to leave that risk uninsured or to seek additional coverage. Ambiguity in an insurance policy begets both litigation and the potential for economic catastrophe from uninsured risks, and the party responsible for any ambiguity is the insurer who wrote the policy.
While an insured enjoys a generous legal standard regarding the scope of the insurer’s duty to defend and the interpretation of ambiguous language in the Policy drafted by the insurer, this does not mean a Court abandons traditional principles of contract law in interpreting insurance contracts. As the Supreme Judicial Court recently declared in Citation Insurance Company v. Gomez:
Interpretation of an insurance contract is no different from interpretation of any other contract... If there is no ambiguity, we ‘construe the words of the policy in their usual and ordinary sense.’. .. When the language of an insurance contract is ambiguous, we interpret it in the way most favorable to the insured . . . ‘However, an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other.’ . . . Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions. A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one . . .
426 Mass. 379, 381 (1998) (citations omitted).
There is no dispute that Gillis fell in a common area of the shopping center outside Tedeschi, a few feet from its door, roughly where the sidewalk met the parking lot. There is also no dispute that Gillis had just bought some things at Tedeschi and left the store. Demarkles contends that, since Gillis had just been a customer of Tedeschi and had just left the store, liability regarding her fall arose out of the “use” of the store that Tedeschi leased from it, triggering Commercial Union’s duty to defend it under the Additional Insured Endorsement of the Policy.
Although the language of this Endorsement is boilerplate, there appears to be no reported case in Massachusetts interpreting its meaning. Looking to court decisions in other states provides little guidance, since these courts are divided. Some find that the policy language unambiguously excludes from coverage any claim arising out of conduct that occurred outside the leased premises. See, e.g., General Accident Fire & Life Assurance Corp., Ltd., 556 N.Y.S.2d 76, 162 A.D.2d 130 (1990) (no obligation to defend or indemnify where accident did not occur within that part of the premises leased to named insured); Rensselaer Polytechnic Institute v. Zurich American Insurance Company, 575 N.Y.S.2d 598, 176 A.D.2d 1156 (1991) (no coverage for accident in walkway adjacent to the leased premises); Northbrook Insurance Company v. American States Insurance Company, 495 N.W.2d 450 (Minn. App. Ct. 1993) (no coverage for slip and fall in alley behind shopping center); United States Fidelity & Guaranty v. Drazic, 877 S.W.2d 140 (Mo.App.Ct. 1994) (no coverage for slip and fall in parking lot near insured’s building). Others have found this language to provide coverage when there is “a substantial nexus between the occurrence and the use of the leased premises,” so that the occurrence was “a natural and reasonable incident or consequence of the use of the leased premises . ..” Franklin Mutual Insurance Company v. Security Indemnity Insurance Company, 646 A.2d 443, 446 (N.J. Super. A.D. 1994) (finding coverage when plaintiff slipped on the exterior steps of the Jury Box Luncheonette). See also Maryland Casualty Company v. Chicago and North Western Transportation Company, 466 N.E.2d 1091 (Ill.App. 1 Dist. 1984) (finding coverage for rape of employee immediately outside leased premises as she was about to begin work).
I find, for three reasons, that Gillis’s fall in the common area of the shopping center outside that part of the premises leased to Tedeschi did not arise out of the “use” of that leased premises, and therefore is not covered by the Commercial Union Policy. First, the Commercial Union Policy provides that DeMarkles is an insured, “but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Tedeschi]." (Emphasis added). This clear language, reasonably interpreted, limits Commercial Union’s coverage of DeMarkles to occurrences that took place on the leased premises. Rensselaer Polytechnic Institute v. Zurich American Insurance Company, 575 N.Y.S.2d at 600. Any other interpretation is either unreasonably broad, arbitrary, or ambiguous. If, as DeMarkles contends, this provision gives coverage to accidents that occur outside the leased premises as long as the accident arose out of the business use of the premises, then there is no geographic limit to this provision; the insurer would just as surely be liable for a customer’s fall that occurred at the far end of the parking lot, or across the street near her parked car, or on her way home. If one were to attempt to avoid this overbreadth by setting geographic limits, one would need either to be arbitrary (the common area outside the store) or ambiguous (the area immediately outside the front door).
Second, an objectively reasonable insured, reading the relevant language of the Additional Insured Endorsement under the circumstances in which it was added to the Policy, would expect it to be limited to occurrences that took place on the leased premises. See Atlantic Mutual Insurance Co. v. McFadden, 413 Mass. at 92. If the coverage were so broad in scope as to include occurrences off the leased premises, then the insurer would surely have demanded an additional *274 premium for this increase in coverage, but none was sought here. The absence of any additional premium reflects the insurer’s understanding that no significant additional risk was being insured by the addition of the landlord as an insured, and the insureds reasonably would have shared that understanding. Moreover, both DeMarkles and Tedeschi recognized that the landlord was separately insured for accidents that took place in the common areas of the shopping center: indeed, the 1989 Lease Extension obliged Tedschi to pay 57 percent of the premiums for that insurance. Both insureds reasonably should have understood that the purpose of adding DeMarkles as an insured to Tedeschi’s Commercial Union policy was not to duplicate DeMarkles’ liability insurance for common areas but instead to insure DeMarkles against the risk of being found vicariously liable for torts occurring within the premises leased by Tedeschi. See Northbrook Insurance Company v. American States Insurance Company, 495 N.W.2d at 453 (in landlord-tenant context, one of primary functions of additional insured endorsement is to protect additional insured from vicarious liability for acts of named insured on the named insured’s premises).
Third, an objectively reasonable insured would reasonably have understood that there were sound business reasons for the Endorsement to limit coverage for the landlord to acts occurring within the leased premises, and reasonably would have understood the language of that Endorsement to fulfil those business reasons. It makes good sense, especially in the context of a shopping center, for there to be clear lines as to who is insuring what risk, so that all foreseeable risks are covered by insurance and premiums are not needlessly increased by redundant coverage. It also makes good sense for the entity responsible for the maintenance of a property also to be responsible for insuring against risks resulting from the absence of proper maintenance on that property. It is not surprising that DeMarkles and Tedeschi followed these basic principles in allocating insurance for the shopping center: DeMarkles maintained and insured the common areas, Tedeschi maintained and separately insured its own leased premises, and DeMarkles required Tedeschi to add it as an additional insured on its Policy to guard against vicarious liability, which Tedeschi could do at no additional cost. These clear lines are lost if one interprets the Additional Insured Endorsement to cover risks beyond the geographic scope of the leased premises. Such an interpretation would mean either that DeMarkles and Tedeschi both purchased insurance to cover some of the same risks (with Tedeschi paying the tab twice since it paid 57 percent of DeMarkles’ insurance premiums for general liability coverage), or that DeMarkles should have narrowed the scope of its policy in some uncertain way to avoid double coverage and save money. In short, clear lines of insurance coverage make good business sense and only one interpretation permits these lines to be drawn clearly. Both of these businesses reasonably should have understood that.
2. If the Commercial Union Policy did not provide coverage to DeMarkles, did Tedeschi breach its lease agreement with DeMarkles by failing to “keep in full force and effect a policy of public liability insurance with respect to the demised premises and the business operation by the Tenant?"
Demarkles contends that, if the Commercial Union Policy does not provide coverage, then Tedeschi necessarily breached its lease agreement with Demarkles, which obliged it to “keep in full force and effect a policy of public liability insurance with respect to the demised premises and the business operation by the Tenant” for the benefit of both the landlord and the tenant. DeMarkles is wrong.
Under the plain language of this provision, Tedeschi satisfied its contractual obligation by adding DeMarkles as an additional insured to its Commercial Union policy. The Lease makes it clear that the “demised premises” is the 2,470 square feet of rented store space, not the common areas of the shopping center. Consequently, Tedeschi indeed obtained a “policy of public liability insurance with respect to the demised premises” when it added DeMarkles as an insured to the Commercial Union Policy, because the scope of coverage provided for under the Lease was limited to occurrences on the leased premises. The mere fact that DeMarkles is not covered under this Policy for the Gillis accident in a common area of the shopping center does not mean that Tedeschi failed to uphold its Lease obligation; it simply means that that obligation did not extend so far as to require Tedeschi to insure DeMarkles against risks that occurred on property owned, maintained, and insured by DeMarkles.
This reading of the plain language is supported by the business context of this lease provision. As stated earlier, DeMarkles was already insured for risks occurring in the common area of the shopping center, and Tedeschi, as a tenant, was already paying more than half the cost of that premium. It is not reasonable to interpret this lease provision to require Tedeschi to insure DeMarkles again for these same risks. Rather, it is reasonable to understand it to cover DeMarkles’ risk of being found vicariously liable for wrongs occurring on the demised property.
ORDER
For the reasons stated above, it is hereby ORDERED that the third-party defendant Commercial Union’s cross-motion for summary judgment on the third-party complaint brought by the defendants/third party plaintiffs DeMarldes is GRANTED, and that DeMarkles’ motion for summary judgment against Commercial Union is DENIED. It is further ordered that Tedeschi’s cross-motion for summary judgment on Count Three of Demarkles cross-claim is *275 GRANTED, and that DeMarkles’ motion for summary judgment on Count Three of its cross-claim against the defendant Tedeschi is DENIED. Judgment shall enter on behalf of Commercial Union with respect to the third-party complaint, with costs. Count Three of DeMarkles’ cross-claim against Tedeschi is dismissed.

 Charles DeMarkles, in his capacity as Trustee of the DeMarkles Realty Trust, is also a defendant/third-party plaintiff. Since his pleadings are identical in substance to the Realty Trust itself, both these defendants/third-party plaintiffs shall be referred to as DeMarkles.