## Shirley M. O'Connell *vs.* Reliance Insurance Company.

No. 98-P-166.

Plymouth. November 16, 1999. - October 26, 2000.

Present: Armstrong, C.J., Kass, & Rapoza, JJ.

*Broker,* Insurance. *Agency,* What constitutes, Ratification. *Insurance,* Liability insurance, Certificate of insurance. *Contract,* Public works, Insurance. *Public Works,* General contractor.

A Superior Court judge incorrectly granted summary judgment in favor of an insurer on claims against its insured, a contractor, on a public works reconstruction project, on the ground that the certificate of insurance had not been issued by the insurer or by anyone authorized to bind the insurer; where the insurer had knowledge that an unauthorized broker was signing such certificates, purportedly as an authorized representative of the insurer, and had taken no steps to repudiate the certifications, the insurer was estopped to deny coverage. [335-337]

A person injured by a contractor's negligent performance of a public road contract was an intended beneficiary of an insurer's contractual obligation to the Commonwealth to cover the contractor's liability to such an injured person, as represented in its certificate of insurance. [337]

Civil action commenced in the Superior Court Department on November 13, 1992.

The case was heard by *John A. Tierney,* J., on motions for summary judgment.

*Brian K. Bowen* for the plaintiff.

*Susan A. Jackson* for the defendant.

Armstrong, C.J. Shirley M. O'Connell, the plaintiff, appeals from an adverse judgment that followed allowance of the defendant Reliance Insurance Company's (Reliance) motion for summary judgment and the denial of her motion for partial summary judgment. The circumstances were these.

In January, 1992, O'Connell was injured — she broke her wrist — as a result of a dangerous condition created by Todesca-Forte, Inc. (Todesca), which was working on a State-funded

highway reconstruction contract. She filed a negligence claim against Todesca and was later allowed to amend her complaint to add Todesca's liability insurer, Reliance. In September, 1996, the claim against Todesca was resolved by an agreement for judgment for O'Connell in the amount of $22,270, plus costs. Todesca thereafter filed for bankruptcy, and the focus of attention turned to the claims against Reliance for breach of contract, for equitable estoppel, to reach and apply, and for relief under G. L. c. 93A and c. 176D. The latter's principal line of defense was that Todesca's liability was subject to a "self-insured retention," or deductible, such that Reliance was not obligated to provide insurance coverage until Todesca itself paid $250,000 in damages for any single covered occurrence or an aggregate of $600,000 in damages for more than one occurrence during the policy period. The deductible, of course, reduced Todesca's premium. Since O'Connell's damages fell well within the deductible, she could not collect from Reliance under the terms of the policy as written.

That much O'Connell acknowledges. She argues, however, that her injuries arose from Todesca's negligent performance under a publicly bid construction contract; that the contract terms required Todesca to obtain public liability insurance with a limit of not less than $500,000 per person and $1,000,000 per accident; and that Todesca, in order to qualify to commence work, had been required to furnish a certificate signed by an authorized representative of the insurer, verifying that such coverage was in place. Todesca had furnished a certificate, prepared on a standard Department of Public Works certificate form, verifying the existence of coverage underwritten by Reliance with $500,000-$1,000,000 limits of liability, but without mentioning the deductible that, in effect, negated the certified coverage pro tanto. See *California Plant Protection, Inc.* v. *Zayre Corp.*, 39 Mass. App. Ct. 627, 632 (1996). The form had been signed by Todesca's insurance broker of record, MF&T International (MF&T), which at one time had a general agency relationship with Reliance. On the basis that its agency had ended, the judge ruled that the certificate did not bind Reliance. It had not been issued by Reliance or one authorized to bind Reliance.

The judge's reasoning was correct as far as it went, but it failed to take account of the fact that MF&T, after the termination of its agency for Reliance, continued to engage in business

as a broker and went on writing certificates of coverage, signing as an "authorized representative" of Reliance; that, when it issued the certificate in this case, it gave the certificate back to Todesca for filing with the Department of Public Works, and, following its usual practice, sent a copy of the certificate to Reliance, with a cover letter asking Reliance to confirm that the certificate was correct. Occasionally Reliance would correct such a certificate; it seems Reliance reviewed for accuracy only a sampling of the certificates it received. It apparently did not do so in this case, and it did not issue a correction. Despite knowledge that MF&T was signing such certificates as an authorized representative for Reliance, the latter did nothing to stop the practice.

In these circumstances, it was error to grant summary judgment for Reliance. As a liability insurer for construction contractors, Reliance must be assumed to understand the critical role of such certificates in obtaining public contracts; the furnishing of such certificates verifying the existence of coverage is a necessary part of servicing such insurance. That MF&T assumed the burden of issuing such certificates provided a benefit to Reliance in the form of reduced administrative costs. Whether we focus on that benefit or the benefits to Reliance from writing the underlying coverage, the case falls within the settled rule "that one cannot accept the benefits of a transaction purporting to be done in his behalf and afterwards repudiate it." *Calkins* v. *Wire Hardware Co.*, 267 Mass. 52, 68 (1929). *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 19, cert. denied, 522 U.S. 1015 (1997).

While MF&T may not have been a Reliance agent, it sold Reliance policies as a broker and serviced those policies to some extent. The relationship between them was such that Reliance had a duty to repudiate representations of MF&T purporting to speak for Reliance. "Where an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts." *Id.* at 18, and cases cited. Reliance was aware that MF&T was issuing certificates in its name, and it accepted the benefits of that activity. Its acquiescence gave MF&T apparent authority to issue certificates of the type it gave to Todesca. Compare *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 730 (1974), *S.C.*, 368 Mass. 811 (1975). The Com-

monwealth relied on the certificate in permitting Todesca to undertake work under the contract. In effect, the existence of the coverage represented in the certificate became a condition or term of the contract. (The certificate called for the insurer to agree not to cancel or reduce coverage without giving thirty days' prior notice to the Department of Public Works.)

The motion judge also concluded that the plaintiff was an incidental, rather than an intended, beneficiary of the contract. See Restatement (Second) of Contracts § 302 (1981). We disagree. O'Connell, as one injured by Todesca's negligent performance of a public road construction contract, was an intended beneficiary of Reliance's contractual obligation to the Commonwealth to cover Todesca's liability to O'Connell as represented in the certificate. *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 195-196 (1982). *Flattery* v. *Gregory*, 397 Mass. 143, 148-151 (1986). For purposes of recovery under a contract theory, foreseeable reliance on the existence of coverage is not determinative. *Id.* at 147, 150-151. *Baldwin* v. *Mortimer*, 403 Mass. 142, 144-145 (1988). If reliance were necessary as it would be on a tort theory of recovery (see *Flattery* v. *Gregory, supra* at 147; *Baldwin* v. *Mortimer, supra* at 144), it might well be found by implication from the fact that the liability coverage is compulsory for public construction contractors, and the traveling public has a right to assume it is in place. See *Flattery* v. *Gregory, supra* at 147. It is unnecessary that we reach the point in this case.

The judge correctly dismissed counts III and IV alleging civil conspiracy and violations of G. L. c. 93A and c. 176D. The question of Reliance's liability on the policy was scarcely free from doubt; it could reasonably conclude, as it did, that it had no duty with respect to a claim clearly within Todesca's retention. "In such circumstances, an insurer's refusal to defend, even if ultimately determined to be wrong, does not support a claim under G. L. c. 93A." *Polaroid Corp.* v. *The Travelers Indem. Co.*, 414 Mass. 747, 754 (1993).

Our decision on the contract and related counts (II, V, and VI) is predicated on facts substantiated in the summary judgment documents, taken in the light most favorable to O'Connell. Some of those facts are contradicted in other parts of the record — for example, as to the policy of the Department of Public Works regarding the structure of liability coverages. Because there are material facts in issue, the motion judge did not err in

denying the plaintiff's motion for partial summary judgment on counts II, V, and VI.

The judgment is affirmed as to counts III and IV. It is otherwise reversed, and the case is remanded to the Superior Court for further proceedings in accordance herewith.

*So ordered.*