Lauriat, J.
Plaintiff, Joanna B. Shumway (“Mrs. Shumway”) brought this action for damages arising from the injuries that her husband, John G. Shumway (“Shumway”) sustained in an automobile accident. Shumway eventually died, allegedly as the result of the injuries he suffered in this accident. Mrs. Shumway brought the current action against Rita Barboza, the driver of the vehicle that struck Shumway, Eastway Plaza, LLC (“Eastway”), the owner of the premises where the accident occurred, and Tedeschi Realty Corporation (“Tedeschi”), Eastway’s property manager. Mrs. Shumway alleged that Eastway, and Tedeschi as Eastway’s agent, were negligent in failing to construct a fence or barrier in the area where the accident occurred. Eastway leased a building to Shumway’s employer, Grossman’s Bargain Outlets (“Grossman’s”), at the Eastway Plaza Shopping Center. As required by the terms of the lease, Grossman’s named Eastway as an additional insured on the general liability insurance policy it had with Lumbermen’s Mutual Casualty Company (“Lumbermen’s”). After the accident, Lumbermen’s disclaimed coverage as beyond the terms of its policy, and Eastway instituted a third-party action demanding a defense and indemnity against Shumway’s claims.
Eastway and Lumbermen’s have now filed cross motions for summary judgment in the third-party action. Eastway contends that Lumbermen’s should provide coverage since Shumway was struck while working for Grossman’s. Therefore, as the additional insured on Grossman’s policy it should be defended and indemnified because Shumway’s injuries arose out of his use of the leased premises for Grossman’s benefit. Alternatively, Eastway argues that it is entitled to a defense and indemnity since the area where Shumway was injured was either an appurtenance to Grossman’s leasehold or in Grossman’s exclusive use and control. Finally, Eastway asserts that the certificate of insurance naming it as an additional insured carried independent significance such that it provided Eastway greater coverage than it provided Grossman’s.
Lumbermen’s counters that the accident occurred in a common area, that Eastway is not the real party in interest, and, since it is essentially an excess carrier to Grossman’s primary self insurance policy, it has validly contracted out of its duty to defend.
BACKGROUND
The Eastway Plaza Shopping Center, located on Centre Street in Brockton, Massachusetts, contains a number of free standing buildings. One of these buildings, 587 Centre Street, was leased to Grossman’s. The entire shopping center can be accessed from a private roadway that curves around the side of the Grossman’s building. Grossman’s fenced in some of the space between its building and the access road, but an unfenced area existed between the roadway and the fence. The roadway and the unfenced area were both paved with the same material. However, the *400 location of the road was delineated by clearly visible stripes.
On April 19, 1999, Ms. Barboza struck Shumway while he was working for Grossman’s in the area of or between the fence and the roadway. There is some dispute over whether Shumway was standing in the road when the impact occurred. Lumbermen’s, as Grossman’s Workers’ Compensation insurer, paid survivor benefits as the result of Shumway’s job-related death. However, Shumway’s wife, on her own behalf and as the Administratrix of Shumway’s estate, brought additional claims for negligence against Ms. Barboza, Grossman’s, Eastway and Tedeschi. After Grossman’s was eliminated from her action, the proceedings continued against Barboza and Eastway. Eastway turned to Lumbermen’s for the defense and/or indemnity of Shumway’s action, claiming coverage through a certificate of insurance issued to it by Grossman’s in conformity with the parties’ lease. Lumbermen’s rejected the request for coverage, primarily on the basis that Grossman’s did not lease the area where the accident occurred and that the loss was beyond the scope of its liability policy with Grossman’s.
Eastway is the owner of the entire shopping center of which Grossman’s is a part. However, it has contracted the day-to-day management of the shopping center, including responsibility for maintenance and repairs, to Tedeschi. Within its contractual area of responsibility, Tedeschi took on the task of regulating automobile and pedestrian traffic at the entrance to and within the shopping center. In addition, Tedeschi, by the terms of a management agreement, promised Eastway it would “indemnify and hold harmless from and against all claims, losses and liabilities arising out of damage to the property or injury to, or death of persons . . . occasioned by or in connection with acts or omissions of Manager or its agents and all costs, fees and attorney’s expenses in connection therewith.”
The lease between Grossman’s and Eastway describes the leasehold as “(a)pproximately 33,600 square feet of retail space designated Unit 12 at Eastway Plaza, Brockton, Massachusetts as shown in an area outlined in red on Exhibit A hereto, together with the right to the exclusive use of the areas outlined in green on Exhibit A for outside storage and sales.” The red outline encompasses the actual building that Grossman leased, while the green outline describes areas of inexact dimensions on both side of the building. However, it is clear that there is an area to the side of the access road that is not part of Grossman’s leasehold. The parties concede that Shumway was struck either in this unfenced area or in the roadway.
Grossman’s lease contains a provision, Article 9.1(i), by which it agrees to indemnify and hold Eastway harmless “from all injury, loss, claims or damage to any person or property while on the Premises unless arising from any omission, fault, negligence or other misconduct of the Landlord; to save the Landlord harmless and indemnified from all injury, loss, claims or damage to any person or property anywhere occasioned by any act or omission, neglect or default of the Tenant . . . Grossman’s sought to fulfill this obligation by naming Eastway as an additional insured on its general liability policy with Lumbermen’s. Grossman’s provided Eastway with a certificate of insurance which stated that Eastway was an additional insured ’’but only with respect to the liability arising out of the ownership, maintenance or use of that part of the premises leased to you." Additionally, the certificate states that it is only informational and does not convey coverage beyond that which is contained in the referenced policies.
The Lumbermen’s policy, in addition to the limitations of the “arising out of’ clause, includes a “self insured retention endorsement” by which Lumbermen’s obligations begin after deducting the self-insured retention amount of $100,000. Additionally, this endorsement modifies Lumbermen’s duty to defend, stating “[W]e shall have the right, but not the duty or obligation to defend or participate in the defense of any ‘suit’ against the Insured . . .” Lumbermen’s obligations to Eastway must be discerned from the texts of these various agreements.
DISCUSSION
Summary judgment will be granted when there are no genuine issues of material fact and where the record, including the pleadings and affidavits, entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and showing that the summary judgment record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party satisfies this burden by submitting affirmative evidence refuting an essential element of the opposing party’s case, or by showing that the opposing party has no reasonable expectation of proving an essential element of their case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat a summary judgment motion by resting on the pleadings or merely asserting disputed issues of fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). However, for'the purposes of a summary judgment motion, the court will review the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Ford Motor Co., Inc. v. Barrett, 403 Mass. 240, 242 (1988).
I.
As a preliminary matter, the court will address Lumbermen’s allegation that Eastway is not the real party in interest in this litigation. Lumbermen’s bases this contention on Tedeschi’s promise to defend and indemnify Eastway for liability arising from Tedeschi’s *401 performance of the management contract. Tedeschi, according to Lumbermen’s, is therefore the real party in interest, as only Tedeschi bears the risk of any loss. Lumbermen’s cites as support the fact that Tedeschi, in conformity with the agreement, is providing Eastway with legal representation in this matter.
According to Mass.R.Civ.P. Rule 17(a), every action must be “prosecuted in the name of the real party in interest. The purpose of the rule is to ’’assure that a defendant is only required to defend an action brought by a proper party plaintiff and that such an action must be defended only once." Massachusetts Association of Independent Insurance Agents & Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 297 (1977). However, the Rule does not require dismissal unless the defendant alleges unfair surprise and/or prejudice, and where there is insufficient reason to view the named plaintiff as a proper party. Lancaster v. General Accident Insurance Co., 32 Mass.App.Ct. 925, 927 (1992).
Lumbermen’s has not alleged unfair surprise in this matter. Given the Rule’s purpose, Eastway’s status as a third-party plaintiff will not lead to multiple suits against Lumbermen’s. Tedeschi’s status as Eastway’s agent in the shopping center’s day to day management could entitle it to bring this action in its own name. See Miller v. Rent Control Board of Cambridge, 31 Mass.App.Ct. 91, 92 n.2 (1991). However, the mere fact that Tedeschi could make itself a party does not mean that it is required to do so, or that Eastway must abdicate its ability to protect its own interests. Tedeschi’s power to bring an action in this matter derives entirely from Eastway’s explicit authority to act in its stead, and all decisions affecting Tedeschi while it was acting in this posture would be binding on its principal, Eastway, as well. Further, Tedeschi cannot bring an action on its own behalf against Lumbermen’s in this matter since it was not named as an additional insured on the policy. Thus, not only has Lumbermen’s failed to establish that it has been prejudiced, it has not presented sufficient reason for the court to view Eastway as an improper party. Therefore, the court concludes that Eastway is a proper party plaintiff.
II.
Lumbermen’s connection to the events giving rise to this action must derive from the insurance policy it sold to Grossman’s. The “(I)nterpretation of an insurance policy is no different from interpretation of any other contract.” Citation Insurance Co. v. Gomez, 426 Mass. 379, 381 (1998). The policy’s unambiguous words will be given their plain meaning and construed in their usual and ordinary sense. See Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982). An ambiguity does not arise simply because parties differ over contrary interpretations of a term. Lumbermen’s Mutual Casualty Co. v. Offices Unlimited, Inc., 419 Mass. 462, 465 (1995). In interpreting any contract, “the object of the court is to construe the contract as a whole, in a reasonable, practical way, consistent with its language, background and purpose.” Vergato v. Commercial Union Insurance Co., 50 Mass.App.Ct. 824, 826 (2001). When an agreement between the parties is contained in more than one document, the separate documents “must be read together to effectuate the intentions of the parties.” Chase Commercial Corporation v. Owen, 32 Mass.App.Ct. 248, 250 (1992). In construing the agreements between the parties in this case, the court must keep in mind that an insurer’s duty to defend greatly exceeds its duty to indemnify. Continental Casualty Co. v. Gilbane Building Co., 391 Mass. 143, 146-47 (1984). An insurer must provide a defense whenever the allegations in an complaint, combined with other readily ascertainable facts, are sufficient to state a claim covered under the terms of the policy. Id.
Applying these principles to the admissible evidence, the court concludes that it is immaterial whether the accident that resulted in Shumway’s death took place in the roadway or in the unfenced area near Grossman’s leasehold. The court does not consider the exact spot of the impact a “material” fact, since Lumbermen’s policy clearly comprehends claims and losses from certain incidents that occur outside the leasehold premises. The policy language that extends coverage to incidents “arising out of. . . the use of that part of the premises leased to you,” grounds the scope of coverage within the leasehold, but takes into account that the effects of actions within the leasehold may be manifested beyond the physical boundaries of the leased premises.
The party’s various interpretations of the “arising out of’ language in Lumbermen’s policy are embodied in their differing analysis of Gillis v. DeMarkles, Civil Action No. 97-242 (Mass.Super.Ct. March 17, 1998) (Gants, J.) (8 Mass. L. Rptr. 271). Lumbermen’s asserts that Gillis, in interpreting a clause identical to the one in its policy, limited a commercial landlord’s liability as an additional insured to occurrences within the geographical limits of the tenant’s leasehold. Eastway counters that such an interpretation renders the coverage available to an additional insured a nullity. Additionally, Eastway contends that Shumway’s status as an employee broadens the applicability of the “arising out of' clause beyond that of the customer in Gillis.
Gillis involved a customer who fell on the sidewalk, conceded by all to be a common area," immediately after leaving the primary insured’s store. The customer sued the store and shopping center. The shopping center, as an additional insured, demanded a defense and indemnity from the store’s insurer. In deciding that no defense or indemnity was due from the store’s insurer to the shopping center, the court reasoned that such coverage was beyond the reasonable expectations of the parties.
*402 The court in Gillis found that limiting liability to incidents within the geographical limits of the leasehold prevented overly broad interpretations of the policy. Given the circumstances of that case, the court confined its analysis to the plight of individuals in common areas. Therefore, it did not address possible liability in a disputed area. However, the policy concern behind the court’s reasoning remains valid.
Risk assessments underlying insurance policies, or even a party’s liability, are not based on potential litigants’ imagination alone. The law objects to the “for want of a nail the kingdom was lost” theory of liability by invoking concepts such as proximate cause, foreseeability and privity. Thus, the mere fact that a person was on a leased premises and later suffered an injury does not, by itself, give rise to liability. On the other hand, the law does not apportion liability solely on the basis of geography. The concept of vicarious liability addresses this contingency. However, vicarious liability does not arise from anything the landlord did within its area of responsibility, but from any of the tenant’s acts or omissions within that leasehold that can properly be attributed to the landlord on the basis that the landlord knew or should have known that the tenant’s acts or omissions would give rise to the danger that caused the injury.
The geographical distinction described in Gillis is preserved by tying the act or omission to the leased premises through the tenant’s control over those premises, yet recognizing that control can have ramifications beyond the premises itself. If Grossman’s, for instance, had allowed vicious dogs to patrol its fenced area and a dog escaped and injured a passerby in another part of the shopping center, Eastway could conceivably be found liable for allowing Grossman’s to implement that particular security scheme.
When viewed in this light, the presence of an additional insured endorsement is not a nullity, but provides protections for risks that arise through means unrelated to the additional insured’s primary coverage. Additionally, coverage against vicarious liability addresses the other policy concerns raised by Gillis. The assessment of little if any additional premium simply recognizes the fact (and the actuarial determination by the insurance company within its competitive business environment) that most often there are clear lines of responsibility between landlord and tenant. Therefore, the additional risk the insurer experiences is negligible and can be priced accordingly.
On the undisputed facts of this case, Eastway does not have liability sufficient to invoke Lumbermen’s policy. The negligence alleged is that a barrier of some kind was not erected to protect people standing between Grossman’s fence and the access road. To find that Lumbermen’s must provide Eastway a defense and indemnity as an additional insured, Eastway must show that its tenant, Grossman’s, had a duty with regard to such a structure. However, a fair reading of Grossman’s lease and Eastway's management agreement with Tedeschi specifically attributes responsibility for safe traffic flow and driving conditions to Tedeschi. This, undoubtedly, explains why Tedeschi is defending Eastway in this matter. Grossman’s obligations for such a barrier are limited to defraying some of the operating expenses involved in building the barrier. Lumbermen’s is not obliged to provide a defense or indemnity to Eastway since the various documents specifically assign the responsibility elsewhere, and its insured’s acts and/or omissions with regard to the alleged negligence do not suffice to impute vicarious liability to Eastway from Grossman’s, Lumbermen’s primary insured.
III.
Eastway counters that even if the policy does not cover the area where Shumway was struck, Lumbermen’s must still provide a defense because the area was an appurtenance to Grossman’s leasehold or an area set aside for Grossman’s exclusive use.
The same concerns with overbreadth that underlay the court’s decision in Gillis militate against Eastway’s appurtenance argument. Lumbermen’s goes too far with its contention that appurtenances are not property, but merely a right to use property similar to an easement. A trough just beyond the fence of a feedpen is a species of property that can be considered appurtenant to the pen. However, Eastway’s definition could extend appurtenances to the entire parking lot and that would be beyond what reasonable parties would expect to convey in a lease. The court concludes, in this context, that the parties could reasonably understand that an appurtenance was a limited right or item indispensable exclusively to Grossman’s business. Thus, should Grossman’s need to place a dumpster near the rear of its building (therefore, beyond either the red or green outlines defining its leasehold), that dumpster could be considered an appurtenance to Grossman’s lease. This interpretation gains force from the lease itself. The only possible item described as an appurtenance in the lease is an area next to the building where shipments or deliveries were made. The ability to receive merchandise for sale and to convey it to customers is precisely the type of commercially reasonable activity indispensable to Grossman’s operations. The area where the accident occurred does not fit this definition. No doubt it was easier to check the fence line from the outside, but that was a matter of convenience only, not an indispensable element exclusive to Grossman’s business operations.
In a similar manner, the circumstances of this case do not support the view that the area in question became part of Grossman’s leasehold merely because it was dead space that no one else was using. There is no dispute that this area benefited Grossman’s more than others. However, that does not transform it into an area where Grossman’s had a right to control access, erect displays, sell merchandise, or perform *403 any of the activities authorized under its lease to the exclusion of anyone else engaged in the same or some different activity. Others, including Eastway and customers of both Grossman’s and other stores in the shopping center, benefited from this area. The degree of Grossman’s benefit, even if ascertainable, is insufficient to transform this area into an adjunct of the leasehold. Therefore, Lumbermen’s is not required to stretch its policy protections to include incidents that arose out of the use of this area.
IV.
Eastway cites O’C’onnell v. Reliance Insurance Company, 50 Mass.App.Ct. 334 (2000), for the proposition that a certificate of insurance can provide an additional insured protections beyond those available to the policyholder. O'Connell involved a similar self-insured retention limit as appears in the Lumbermen’s policy. In O’Connell the self-insurer became insolvent and the carrier refused benefits to the additional insured because the broker that wrote the policy was not authorized to do so, and because the loss settled at a figure below the retention amount. Additionally, O’Connell took place within the context of a publicly financed construction contract where the insurance issued via the certificate covered many otherwise uninsured risks and was a prerequisite for receiving the contract. The Appeals Court concluded that the insurer was bound to the policy because it was aware that the broker was writing such policies and it could not disclaim coverage after knowingly receiving the premium benefits. O’Connell, 50 Mass.App.Ct. at 336. The Appeals Court returned to the reasonable expectation of the parties, but deduced them from the language of the certificate, not from the policy. Id.
In examining the certificate at issue in the present case, it is immediately apparent that the coverage afforded the additional insured does not extend beyond that provided to the primary insured. This proviso appears in two places on the face of the certificate. Given this explicit disclaimer, the court cannot conclude that Eastway could form a reasonable expectation that it would receive benefits greater than any due to Grossman’s. The certificate’s language, in clear, unambiguous terms, reminds any additional insured of the insurance truism that if it wants to know what it is covered for, it has to read the policy. As the certificate did not independently give rise to a reasonable expectation of coverage, the current controversy is outside the reach of O’Connell.
ORDER
For the foregoing reasons, Third-Party Plaintiff, Eastway Plaza, LLC’s Motion For Summary Judgment On Its Third-Party Complaint Against Lumbermen’s Mutual Casualty Company is DENIED, and the Cross Motion of Third-Party Defendant For Summary Judgment is ALLOWED.